■ In the Matter of the Arbitration between CATALYST WASTE-TO-ENERGY CORPORATION OF LONG BEACH, Appellant, and CITY OF LONG BEACH, Respondent.—Order and judgment (one paper) of the Supreme Court, New York County (Edward J. Greenfield, J.), entered on March 21, 1990, which denied petitioner's application to confirm an arbitration award, granted respondent's cross motion to vacate the award, directed the parties to proceed to arbitration before a different panel of arbitrators and dismissed the petition, is unanimously affirmed, with costs and disbursements.

Respondent and petitioner's predecessor entered into an agreement pursuant to which a solid waste incinerator facility would be constructed, and respondent would deliver solid waste to the facility for a period of 20 years. The contract provides that respondent pay a "tipping fee" for each ton of solid waste delivered for processing, the amount to be calculated annually by means of a formula set forth in the agreement. In addition, a cap is placed on the tipping fee equal to 94% of said fee "charged to outside users during the same

period by the Town of Hempstead at its Transfer Station", but the cap would not be applied if the transfer station were closed to "outside users of [respondent's] class." Petitioner is required to supply respondent with a statement prior to the beginning of each year indicating the amount of the tipping fee and the basis for its computations, which statement is binding unless respondent objects within 20 days. If the parties are unable to settle a contested item, the agreement specifies that this matter be submitted to binding arbitration.

In January of 1988, petitioner offered calculations as to the tipping fee without making reference to that of the Town of Hempstead. Respondent protested on the ground that the calculations far exceeded the 94% of the Town of Hempstead tipping fee charged to municipalities located within the town's geographical boundaries and thereafter paid petitioner a lower amount. When negotiations failed to resolve the dispute, petitioner demanded arbitration and compensatory damages of $343,358.84 plus interest, alleging that it was entitled to payment in full on its invoices as charged. Moreover, it sought a declaration that the Town of Hempstead's transfer stations were closed to "outside users of [respondent's] class" and, since the Town of Hempstead no longer permitted municipalities outside its political jurisdiction to use its transfer stations, that the cap provision was inapplicable. Respondent answered and asserted various defenses, including, in part, that the claims were not arbitrable.

Respondent thereafter commenced a special proceeding to stay arbitration, which was subsequently dismissed as untimely *(City of Long Beach v Catalyst Waste-to-Energy Corp.,* 144 Misc 2d 119). The parties then proceeded to arbitration before three arbitrators, none of whom had been appointed by them. At a preliminary hearing, the arbitrators ruled that there were arbitrable issues and directed the parties to proceed with an evidentiary hearing. A prearbitration order listed three questions to be decided: (1) whether the issues presented were arbitrable, (2) whether the Town of Hempstead transfer station was closed to "outside users of [respondent's] class", and (3) the relief or damages to which petitioner was entitled.

Four evidentiary hearings were conducted. Prior to the first, it was agreed that the arbitrators would be paid $500 for each hearing day after the first. Petitioner presented its case during the first two days. Before the third day of hearings, the arbitrators sought an increase in daily fees to $2,000 each per day. The request was presented by the AAA Tribunal Admin-

istrator to petitioner's attorney, who then spoke to respondent's counsel. Respondent opposed the increase but was willing to take the matter under advisement. This response was relayed to the AAA, and the Administrator notified the parties that the arbitrators were interested in obtaining an immediate increase. Respondent proceeded to establish its case at the third hearing. However, prior to the start of the fourth hearing, one of the arbitrators personally telephoned the attorney for each party to ascertain the witnesses to be called and also to advise counsel that the arbitrators wanted resolved the request for additional payment. Respondent contends that the arbitrator conveyed information regarding its witnesses to petitioner. Respondent, consequently, filed a formal complaint with the AAA Director and made an oral application to discharge the arbitrators. Following a hearing on the matter, the Director reaffirmed the appointment of the arbitrators.

On the fourth day of the evidentiary hearings, petitioner brought in a rebuttal witness and also recalled a witness to testify with respect to "bulk waste". Respondent complained that the topic was outside the scope of the prearbitration order but the testimony was, nonetheless, admitted. Respondent now urges that one of the arbitrators stated that it would be an improvident use of time to introduce evidence concerning this issue since the amount involved was minor in comparison to the main claim, suggesting that the parties settle this matter without an additional hearing. Respondent then stipulated to certain deliveries of miscellaneous waste. After the fourth hearing had been completed, the Director telephoned petitioner's attorney and requested that the latter's client agree to a $700 per day increase for each arbitrator. Petitioner did so, and the understanding was set forth in a letter dated July 20, 1989, which writing also declared that the arbitrators would not be told about the source of the fees. Respondent only learned of this agreement as a result of its cross motion in the Supreme Court to vacate the arbitration award.

Submissions were thereafter presented. Petitioner asserted its current claim in a letter dated August 18, 1989. The ensuing unanimous award gave petitioner the amount asked for in the letter and directed the parties to pay fees, expenses and compensation, including the arbitrators' increases, in equal shares. Petitioner subsequently moved to confirm the award. Respondent cross-moved to vacate pursuant CPLR 7511 (b) (1), contending that there had been misconduct in the

procurement of the award, that the arbitrators had exceeded their authority and that the arbitrators had failed to follow proper procedures. The court denied the motion to confirm the award and granted the cross motion to vacate, ordering the parties to proceed to arbitration before a different panel of arbitrators. According to the court, the demands for increased fees and the undisputed ex parte communications violated AAA rules and, under these circumstances, there was an appearance of impropriety. The court, having reached its determination solely on the basis of the arbitrators' misconduct, did not decide the other arguments raised by respondent.

On appeal, petitioner asserts, in part, that the demand for additional compensation and the ex parte communications did not constitute prejudicial misconduct. In that regard, while a request for additional compensation is not misconduct per se, "this practice is contrary to public policy and should not be sanctioned. Parties should not be placed in a position where they feel compelled to accede to the demands of the arbitrators for fear of adverse consequences" *(Matter of Double-M Constr. Corp. v Central School Dist. No. 1,* 61 AD2d 982, 983, *lv denied* 45 NY2d 709). This is especially the situation where, as herein, the request was conveyed prior to the completion of evidentiary hearings *(see, Matter of Fischer [Queens Tel. Secretary],* 106 AD2d 314). Further, the ex parte communications between the parties and the arbitrators violated AAA rules forbidding such direct contacts and warranted vacatur of the award *(see, Matter of Goldfinger v Lisker,* 68 NY2d 225). Notwithstanding petitioner's assertion that there is no indication of prejudice, the actions of the arbitrators herein give the appearance of impropriety *(see, Matter of Elia Bldg. Co. [County of Niagara],* 8 AD2d 684). It is only necessary to demonstrate the potential for bias to find misconduct *(see, Matter of Stevens & Co. [Rytex Corp.],* 41 AD2d 15, 18, *affd* 34 NY2d 123). As was aptly observed by Justice Kassal, concurring in *Matter of Fischer (supra,* at 315-316), "basic, fundamental principles of justice require complete impartiality on the part of the arbitrator and mandate that the proceedings be conducted without any appearance of impropriety". Concur— Murphy, P. J., Ross, Milonas, Kassal and Wallach, JJ.