CEDRELA TRANSPORT
LTD., Petitioner,

v.

BANQUE CANTONALE VAUDOISE,
Respondent.

No. 98 Civ. 2256 JES.

United States District Court,
S.D. New York.

Sept. 29, 1999.

Skoufalos, Llorca & Ziccardi, LLP, New York City (Manuel R. Llorca, Manuel A. Molina, of counsel), for petitioner.

Hill, Rivkins & Hayden, LLP, New York City (Anthony J. Mavronicolas, John J. Sullivan, of counsel), for respondent.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Petitioner Cedrela Transport, Ltd. ("Cedrela") brings the instant petition pursuant to 9 U.S.C. § 1 *et seq.* against respondent Banque Cantonale Vaudoise ("Cantonale") to strike Cantonale's demand for arbitration. Cantonale opposes Cedrela's petition and cross-moves to assert certain counterclaims. For the reasons set for below, Cedrela's petition is denied, and Cantonale's cross-motion is denied.

## BACKGROUND

On May 31, 1994, Cedrela entered into a charter party ("Charter") with Knotts Shipping Inc. ("Knotts") whereby Cedrela chartered a vessel from Knotts for a period of thirty months. *See* Verified Petition to Strike Arbitration Demand filed on March 27, 1998 ("Pet.") at ¶ 5. The Charter contained an arbitration clause that provided for the referral of "any dispute" between the parties to a three person panel in New York selected by the parties, and that the "decision of any two of them, shall be final." *Id.* at Exhibit ("Ex.") A, ¶ 17. In May, 1996, Knotts refinanced the vessel chartered to Cedrela to Cantonale, and informed Cedrela that it had assigned "all ... our rights, title and interest ... in and to all moneys whatsoever ... under the Charter ... *and all our rights and benefits under the Charter.*" *Id.* at Ex. B, ¶ 1 (emphasis added). On May 29, 1996, Cedrela acknowledged acceptance of the assignment. *See id.* at ¶ 6. Thereafter, a dispute over hire payments arose between Cedrela and Cantonale, and on February 23, 1998, Cantonale wrote Cedrela demanding arbitration of the dispute pursuant to the terms of the Charter. *See id.* at Ex. D. On March 27, 1998, Cedrela filed the instant petition, in response to Cantonale's demand, arguing that Cantonale could not demand arbitration because it was not a party to the Charter that con-

tained the arbitration clause. *See id.* at ¶ 10.

## DISCUSSION

### I.

■ The Federal Arbitration Act embodies "a liberal national policy favoring arbitration agreements," *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); thus, district courts are instructed "to compel arbitration unless the 'making' of an arbitration agreement, or one party's failure, neglect, or refusal to arbitrate is called into question." *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, et al.,* 9 F.3d 1060, 1063 (2d Cir.1993) (quoting *McAllister Bros. v. A & S Transp. Co.,* 621 F.2d 519, 522 (2d Cir.1980)). Moreover, such agreements are governed by basic principles of contract and agency, and a party may not generally be compelled to arbitrate unless he has agreed to do so. *See Thomson–CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995) ("*Thomson–CSF* "). In considering a motion to enforce an arbitration agreement, the Court must determine whether (1) there is a valid arbitration agreement between the parties, and if so, (2) whether the dispute at issue is covered by the terms of the arbitration clause. *See Deloitte Noraudit A/S,* 9 F.3d at 1063.

The parties do not contest that the particular dispute at issue here is covered by the broad "any disputes" language contained in arbitration clause of the Charter. Accordingly, the Court need only decide whether there is a valid agreement between the parties to arbitrate at all. Here, petitioner argues that it cannot be compelled to arbitrate with Cantonale because (1) Cantonale was neither a signatory nor party to the Charter between Knotts and Cedrela that contained the ar-

bitration provision, *see* Memorandum of Law in Support of Petition to Strike Arbitration Demand dated March 27, 1998 at 3–4; Reply Memorandum of Law in Further Support of Petition to Strike Arbitration Demand and in Opposition to Respondent's Application to Assert Counterclaims dated June 15, 1998 ("Rep.Mem.") at 3–4, and (2) because the assignment between Cantonale and Knotts was limited solely to a transfer of the right to receive "moneys" due under the Charter. *See* Rep.Mem. at 6. In response, Cantonale contends that it is entitled to demand arbitration under the clear terms of the notice of assignment and Cedrela's subsequent acknowledgment. *See* Respondent's Memorandum in Opposition to Petitioner's Petition to Strike Respondent's Arbitration Demand and in Support of Respondent's Application to Assert Counterclaims at ("Respondent's Mem.") at 3–6.

■ Petitioner's argument that Cantonale is not entitled to arbitration because it is neither a signatory nor party to the Charter lacks merit. Cedrela relies on the Second Circuit's decision in *Thomson–CSF* for the proposition that a nonsignatory to an arbitration agreement may only be bound or demand arbitration under the five theories outlined in *Thomson–CSF.*[1] *See* Rep.Mem. at 3–4, 6. Cedrela's reliance on *Thomson–CSF,* however, is misplaced because the instant petition turns, not on whether a nonsignatory may be bound to submit to arbitration with a signatory, as in *Thomson–CSF,* but whether a party that has concededly entered into a contract with a broad, "all disputes" arbitration clause can be compelled to arbitrate by an assignee of that agreement. Several courts in this Circuit have recognized that assignees of such contracts may be entitled to compel signatories to those agreements to submit to arbitration. *See Fisser v. Int'l Bank,* 282 F.2d 231, 241 n. 6 (2d

---

1. The *Thomson–CSF* court noted that the Second Circuit has "recognized five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) as- sumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." *Thomson–CSF,* 64 F.3d at 776.

Cir.1960) (noting that "assignees of contracts containing arbitration provisions may become parties to such provisions."); *Certain Underwriters at Lloyd's London v. Colonial Penn Insurance Co.,* No. 97 Civ. 767, 1997 WL 316459 at *2 (S.D.N.Y. June 11, 1997) (Patterson, J.) (holding that assignee of an agreement that contained an arbitration provision had the right to compel a party to that agreement to submit to arbitration where the assignment assigned "all of [the assignor's] rights" under the agreement); *cf. Banque De Paris et des Pays–Bas v. Amoco Oil Co.,* 573 F.Supp. 1464, 1469 (S.D.N.Y.1983) ("Were Paribas an assignee of the contract between Amoco and Quasar, it would no doubt be required to arbitrate this dispute"); *Wells Fargo Bank Int'l Corp. v. London Steam–Ship Owners' Mutual,* 408 F.Supp. 626, 629 (S.D.N.Y.1976) (recognizing that assignees have been held to arbitration agreements to which they were nonsignatories).

Under the assignment,[2] Knotts assigned to Cantonale:

"absolutely all its rights, title and interest, both present and future, in and to the Charter and all moneys whatsoever (and all claims for such moneys) due or to become due to us for our account ... under the Charter, including (but not limited to) damages for breach (or payments for variation or termination) of the Charter, together with the benefit of any guarantee, indemnity, or other security which may at any time be given to [Knotts] as security for payment of such moneys, and *all other rights and benefits under the Charter,* all of which the [Knotts] hereby warrants that it has not assigned, mortgaged, charged or otherwise encumbered or disposed of to any other person." Assignment dated May 7, 1996 ("Assignment") at ¶ 2.1 (emphasis added).

Cedrela contends that Knotts merely assigned it rights to receive money under the Charter, and that Cantonale, the beneficiary of a financing agreement, is not entitled to demand arbitration. That interpretation is, however, unduly narrow and inconsistent with the plain language of the assignment. While the assignment transferred the rights to all "moneys" under the Charter, its scope is not so limited. As recited above, the assignment also assigned "all other rights and benefits" under the Charter, including the right to demand arbitration. Moreover, this conclusion is reinforced by other provisions contained in the assignment that precluded Knotts from "assign[ing] ... or dispos[ing] of the whole or any part of the rights and moneys hereby assigned to [Cantonale]," Assignment at ¶ 4.1, or "assign[ing] or transfer[ring] any of [Knotts's] rights, powers or duties or liabilities under the Charter." *Id.* at 4.6.1. This language is consistent with Cantonale's position that Knotts and Cantonale contemplated a broad transfer of rights under the Charter. Accordingly, the Court concludes that Cantonale obtained the right to demand arbitration pursuant to the Charter and the Assignment.

## II.

Cantonale, in its response to Cedrela's petition, asserts that it is entitled to serve certain unspecified counterclaims against Cedrela free of any defense based upon personal jurisdiction. *See* Respondent's Mem. 6. Cantonale argues that Cedrela has waived personal jurisdiction as a defense by commencing the instant action, and by its agreement to arbitrate all disputes in New York. *See id.* Although the Court agrees that Cedrela has waived personal jurisdiction by agreeing to arbitrate all disputes in New York, *see Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Lecopulos,* 553 F.2d 842, 844 (2d Cir.1977) (holding that an agreement to arbitrate

**2.** On September 20, 1999, the Court directed Cantonale to produce a copy of the actual assignment that it neglected to include in its

response to Cedrela's petition. It has done so.

disputes in New York constitutes a consent to personal jurisdiction in New York); *Babitt v. Frum*, 606 F.Supp. 680, 682 (S.D.N.Y.1985) (Edelstein, J.) (noting that absent waiver of the right to demand arbitration, agreement to arbitrate disputes in New York establishes personal jurisdiction over the parties in New York), there is no reason to decide whether, by bringing this petition, it has waived personal jurisdiction with respect to a judicial resolution of any as yet unasserted counterclaims because the Court has concluded that the petition should be denied and the matter resolved by arbitration.

## CONCLUSION

For all of the aforementioned reasons, Cedrela's petition to strike Cantonale's arbitration demand shall be and hereby is denied and Cantonale's cross-motion to assert counterclaims is denied. Cedrela is directed to submit to arbitration with Cantonale all claims pursuant to the arbitration clause in the Charter. The Clerk of Court is directed to close the above-captioned action.

It is **SO ORDERED.**