Matter of Sivanesan v YBF, LLC (2024 NY Slip Op 04327)

Matter of Sivanesan v YBF, LLC

2024 NY Slip Op 04327

Decided on August 28, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 28, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
JOSEPH J. MALTESE
DEBORAH A. DOWLING
HELEN VOUTSINAS, JJ.

2020-01112 
2020-04038
 (Index No. 67996/18)

[*1]In the Matter of Janu Sivanesan, petitioner-respondent,
v
YBF, LLC, et al., respondents, Visual Beauty, LLC, et al., appellants.

Cervini Swanson LLP, New York, NY (Joseph P. Cervini, Jr., and Scott L. Swanson of counsel), for appellants.
Kenneth J. Gorman, P.C., New York, NY, for petitioner-respondent.

DECISION & ORDER
In a proceeding pursuant to CPLR article 75 to confirm two arbitration awards dated July 17, 2018, and August 30, 2018, respectively, in which Visual Beauty, LLC, and TPR Holdings, LLC, cross-petitioned to vacate the awards, Visual Beauty, LLC, and TPR Holdings, LLC, appeal from (1) an order of the Supreme Court, Westchester County (Gretchen Walsh, J.), dated December 23, 2019, and (2) a judgment of the same court entered January 14, 2020. The order granted the petition to confirm the awards and, in effect, denied the cross-petition to vacate the awards. The judgment, insofar as appealed from, upon the order, is in favor of the petitioner and against Visual Beauty, LLC, and TPR Holdings, LLC, in the total sum of $249,446.50 and awarded the petitioner a three percent continuing equity interest in YBF, LLC, commencing on September 30, 2009, and a three percent continuing equity interest in Visual Beauty, LLC, "and/or any other entity owning the 'YBF' marks or operating the YBF beauty business commencing on the date of creation and operations of such entity."
ORDERED that the appeal from the order is dismissed; and it is further,
ORDERED that the judgment is affirmed insofar as appealed from; and it is further,
ORDERED that one bill of costs is awarded to the petitioner.
The appeal from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the proceeding (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501[a][1]; Matter of Aho, 39 NY2d at 248).
In 2008, YBF, LLC (hereinafter YBF), a company in the business of marketing and selling retail cosmetic products in the United States, Canada, and the United Kingdom using "YBF" and related trademarks (hereinafter the YBF marks), sold an exclusive license to use the YBF marks to nonparty Cosmetics Specialties East, LLC (hereinafter CSE). In July 2009, YBF and its members, Stacey Schieffelin and David Schieffelin (hereinafter together the Schieffelins, and together with YBF, the YBF respondents) entered into a consulting agreement with the petitioner, whereby the petitioner agreed to assist the YBF respondents in recovering the YBF marks. The consulting [*2]agreement provided that the petitioner was to be paid hourly consulting fees in consideration for her services and, in the event that the YBF respondents succeeded in recovering the YBF marks within six months of the date of the consulting agreement, a transaction fee in the amount of three percent of the outstanding equity of the entity operating the YBF beauty business and holding the right to exploit the YBF marks in connection therewith. The consulting agreement provided that disputes relating to or arising out of the consulting agreement shall be submitted to binding arbitration "with JAMS/ENDISPUTE in New York . . . under the JAMS/ENDISPUTE Comprehensive Arbitration Rules and Procedures."
The petitioner provided consulting services to the YBF respondents pursuant to the consulting agreement. In September 2009, YBF entered into an agreement with CSE whereby it recovered the license to the YBF marks. Thereafter, the YBF respondents failed to remit the petitioner's consulting fees and transaction fee, notwithstanding their acknowledgment of the debt.
In August 2015, the petitioner filed a demand for arbitration before JAMS against YBF and "'JOHN DOE' AND 'JANE DOE,'" described in the demand for arbitration as "the persons and/or entities intended and being those that at all relevant times held and continue to hold the YBF Marks as described herein." The YBF respondents did not acknowledge or respond to the demand for arbitration. Instead, in May 2016, apparently unbeknownst to the petitioner, the YBF respondents conveyed the rights to the YBF marks and a controlling interest in YBF to Visual Beauty, LLC (hereinafter Visual Beauty), an affiliate of TPR Holdings, LLC (hereinafter TPR, and together with Visual Beauty, the appellants).
In May 2017, the petitioner amended the demand for arbitration to include the Schieffelins as parties to the arbitration. In June 2017, the petitioner served the amended demand for arbitration upon the YBF respondents "c/o Visual Beauty, LLC," at, among other locations, an office located at 950 Third Avenue and an office located at 875 Third Avenue in Manhattan (hereinafter together the Third Avenue offices). JAMS thereafter served various documents related to scheduling an arbitration hearing "c/o Visual Beauty" at the Third Avenue offices.
Upon the petitioner's application, the arbitrator issued summonses (hereinafter the subpoenas) on March 27, 2018, requiring the appellants to attend an arbitration hearing as witnesses and to provide documentary evidence related to the corporate structures of YBF and the appellants. The subpoenas used the same caption as the amended demand for arbitration and were served upon, among others, Visual Beauty at 875 Third Avenue.
The appellants did not appear at the arbitration hearing, which was held on April 25, 2018. At the arbitration hearing, the petitioner presented evidence to demonstrate that the appellants were successors in interest toYBF, and the arbitrator granted her application to add the appellants as parties to the arbitration. The petitioner thereafter submitted proposed arbitration awards which included the appellants and were served upon them on July 16, 2018, at 875 Third Avenue.
On July 17, 2018, the arbitrator issued an award in favor of the petitioner and against the YBF respondents and the appellants. The arbitration award was served upon, among others, Visual Beauty at the Third Avenue offices. On August 1, 2018, the appellants lodged a formal objection, seeking, inter alia, vacatur of the arbitration award on the grounds that they were not parties to the arbitration and had not been served with process or received notice of the arbitration. After a hearing, at which the appellants appeared, the arbitrator issued an award dated August 30, 2018, determining that there was no basis for vacating the arbitration award dated July 17, 2018.
The petitioner commenced this proceeding pursuant to CPLR article 75 to confirm the arbitration awards. The appellants cross-petitioned to vacate the awards. In an order dated December 23, 2019, the Supreme Court granted the petition to confirm the awards and, in effect denied the cross-petition. Thereafter, the Supreme Court entered a judgment, upon the order, inter alia, in favor of the petitioner and against the appellants in the total sum of $249,446.50 and awarding the petitioner a three percent continuing equity interest in YBF commencing on September 30, 2009, and a three percent interest in Visual Beauty, "and/or any other entity owning the 'YBF' marks or operating the YBF beauty business commencing on the date of creation and operations of [*3]such entity." This appeal ensued.
As a threshold matter, and contrary to the appellants' contention, this proceeding is governed by the Federal Arbitration Act (9 USC § 1 et seq.; hereinafter FAA), which applies to any arbitration agreement evidencing a transaction involving interstate commerce (see id. § 2). The language "involving commerce" conveys "an intent to exercise Congress' commerce power to the full" (Allied-Bruce Terminix Cos. v Dobson, 513 US 265, 277 [internal quotation marks omitted]; see Citizens Bank v Alafabco, Inc., 539 US 52, 56; Highland HC, LLC v Scott, 113 AD3d 590, 592-593).
In this case, the transaction between the parties involved interstate commerce, as YBF, a Connecticut company with offices in New York, and whose members were residents of Florida, contracted with the then New York-based petitioner for the purpose of securing the YBF marks for use in its business of marketing and selling products in the United States, Canada, and the United Kingdom.
Nevertheless, parties to an arbitration "may contemplate enforcement under state statutory or common law" (Hall Street Associates, L.L.C. v Mattel, Inc., 552 US 576, 590; see N.J.R. Assoc. v Tausend, 19 NY3d 597, 602). However, a general statement in an arbitration agreement that disputes concerning a contract will be governed by New York law "[does] not express an intent to have New York law govern their agreement's enforcement" (Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp., 4 NY3d 247, 253; see Empire Asset Mgt. Co. v Best, 2022 WL 893402, *1, 2022 US App LEXIS 7996, *3-4 [2d Cir, No. 21-1798-cv]).
Here, the consulting agreement provided that it "shall be governed by and construed in accordance with the laws of the State of New York." This language is merely a general choice of law provision that specifies the law applicable to disputes involving the consulting agreement and does not express an intent to have New York law govern the arbitration agreement's enforcement (see Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp., 4 NY3d at 253). Accordingly, the FAA governs the enforcement of the awards here.
Federal policy strongly favors arbitration (see AT & T Mobility LLC v Concepcion, 563 US 333, 339; Buckeye Check Cashing, Inc. v Cardegna, 546 US 440, 443). However, under the FAA, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit" (In re Buczek, 2023 WL 6618901, *2, 2023 US App LEXIS 26934, *3-4 [2d Cir, No. 22-1920-bk] [internal quotation marks omitted]; see AT & T Technologies, Inc. v Communications Workers, 475 US 643, 649). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator" (AT & T Technologies, Inc. v Communications Workers, 475 US at 649; see In re Buczek, 2023 WL 6618901, *2, 2023 US App LEXIS 26934, *3-4).
Here, it is undisputed that the appellants were not signatories to the arbitration agreement and that there is no evidence that they "clearly and unmistakably" agreed to arbitrate (AT & T Technologies, Inc. v Communications Workers, 475 US at 649; see National Union Fire Ins. Co. of Pittsburgh, PA v Stucco Sys., LLC, 289 F Supp 3d 457, 465 [SD NY]). Thus, the Supreme Court typically would have been required to determine, de novo, whether the appellants were nonetheless bound by the consulting agreement and its arbitration provision as successors in interest under New York law governing contracts (see First Options of Chicago, Inc. v Kaplan, 514 US 938, 944; Maynard v Smith, 206 AD3d 900, 901).
However, "'a party seeking to avoid arbitration on the ground of no agreement to arbitrate can raise such objection only when it has not participated in the arbitration'" (Stone v Noble Constr. Mgt., Inc., 116 AD3d 838, 839, quoting Matter of Commerce & Indus. Ins. Co. v Nester, 90 NY2d 255, 263; see Halley Optical Corp. v Jagar Intl. Mktg. Corp., 752 F Supp 638 [SD NY]), because "[a]n agreement to arbitrate can be implied from a party's conduct in the arbitration proceedings" (Absolute Nevada, LLC v Grand Majestic Riverboat Co., LLC, 646 F Supp 3d 426, 435 [SD NY] [internal quotation marks omitted]; see Gvozdenovic v United Air Lines, Inc., 933 F2d 1100, 1103 [2d Cir]). Therefore, "[w]hen a nonsignatory 'participates in arbitration proceedings [*4]without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration'" (Absolute Nevada, LLC v Grand Majestic Riverboat Co., LLC, 646 F Supp 3d at 435, quoting Opals on Ice Lingerie v Bodylines Inc., 320 F3d 362, 369 [2d Cir]; see ConnTech Dev. Co. v University of Conn. Educ. Props., Inc., 102 F3d 677, 687 [2d Cir]).
Here, when the appellants made their application before the arbitrator, inter alia, to vacate the arbitration award dated July 17, 2018, they did not object to the award on the ground that there was no agreement to arbitrate but on the ground that they did not receive notice and were not served with process. Contrary to the appellants' contention, this did not constitute a jurisdictional challenge bearing on "whether the parties agreed to arbitrate" (AT & T Technologies, Inc. v Communications Workers, 475 US at 649). Rather, questions of due process are "procedural aspects of the arbitration," which are "matter[s] for the arbitrator" (Stotter Div. of Graduate Plastics Co., Inc. v District 65, United Auto Workers, AFL-CIO, 991 F2d 997, 1001 [2d Cir]; see Howsam v Dean Witter Reynolds, Inc., 537 US 79, 83). Accordingly, the appellants waived their objections to the arbitrator's jurisdiction by participating in the proceedings (see In re Arbitration between Halcot Nav. Ltd. Partnership & Stolt-Nielsen Transp. Group, 491 F Supp 2d 413, 417-419 [SD NY]).
Generally, "the party opposing confirmation of an arbitration award may 'object upon any ground which constitutes a sufficient cause under the [FAA] to vacate, modify, or correct, although no such formal motion has been made'" (McLaurin v Terminix Intl. Co., LP, 13 F4th 1232, 1240 [11th Cir], quoting The Hartbridge, 57 F2d 672, 673 [2d Cir]; see United House of Prayer for All People of Church on the Rock of Apostolic Faith v L.M.A. Intl., LTD., 107 F Supp 2d 227, 229 [SD NY]). However, "failure to bring a timely motion [to vacate] is an absolute bar to an application seeking vacatur or modification" (Wang v Skype Communications S.A.R.L, 2022 WL 883773, *1, 2022 US Dist LEXIS 1594, *2 [SD NY, No. 21 Civ. 8082 (LGS)] [internal quotation marks omitted]; see Florasynth, Inc. v Pickholz, 750 F2d 171, 175 [2d Cir]). Furthermore, if a party's "arguments for vacatur are untimely . . . they cannot preclude confirmation" (Wang v Skype Communications S.A.R.L, 2022 WL 883773, *2, 2022 US Dist LEXIS 1594, *4).
Here, in an order dated January 18, 2019, the Supreme Court directed the appellants to file a cross-petition to vacate the awards by February 8, 2019, and to file their opposition to the petition by February 28, 2019. The appellants filed the cross-petition and their opposition to the petition on February 28, 2019. The appellants did not seek to extend the deadlines provided in the order dated January 18, 2019, or provide any excuse for their dilatory filing of the cross-petition. The court did not improvidently exercise its discretion in determining that the appellants were required to raise their arguments in favor of vacatur in the cross-petition, which was not timely filed, and, therefore, the appellants were precluded from raising those grounds for vacating the awards in opposition to the petition (see Wang v Skype Communications S.A.R.L, 2022 WL 883773, *2, 2022 US Dist LEXIS 1594, *4; McLaurin v Terminix Intl. Co., LP, 13 F4th at 1240).
Accordingly, as the appellants waived their objections to the arbitrator's jurisdiction and failed to timely seek to vacate the awards, the Supreme Court properly granted the petition and, in effect, denied the cross-petition.
In light of our determination, we need not reach the parties' remaining contentions.
BRATHWAITE NELSON, J.P., MALTESE, DOWLING and VOUTSINAS, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court