■ In the Matter of RUTH SHOMRON et al., Appellants, v MALI FUKS et al., Respondents. [730 NYS2d 90] —Order, Supreme Court, New York County (Bruce Allen, J.), entered March 6, 2001, which denied the petition to disqualify the law firm of Moses & Singer L. L. P. from representing respondent Mali Fuks in the arbitration proceeding pending before the American Arbitration Association (AAA) and to order the AAA to reinstate William E. Spiro as arbitrator in the arbitration

proceeding, unanimously reversed, on the law, the facts, and in the exercise of discretion, without costs, the petition granted, the law firm disqualified and the arbitrator reinstated.

The underlying dispute in this case arises out of the operation and management of a New York partnership formed to acquire a building located at 205 West 103rd Street in Manhattan. Respondent Mali Fuks (Fuks) and petitioner Ruth Shomron (Shomron) each own a 50% share in the partnership. In December 1996, respondent commenced an action against Shomron and petitioners Howard I. Simon and Larry Goldstein (collectively, petitioners), who were former partners in the partnership, alleging conversion, fraud and breach of fiduciary duty, and seeking an accounting from Shomron. In November 1997, on Shomron's cross motion, the action was stayed pending arbitration. Fuks then filed and served a demand for arbitration with the AAA. Shomron also filed for arbitration and her demand was deemed by AAA as a counterclaim to Fuks's demand.

On January 16, 1998, William E. Spiro was appointed arbitrator. Over the next year, Mr. Spiro presided over preliminary hearings and made rulings in preparation of evidentiary hearings that commenced in January 2000. Between January and July 2000, he presided over 18 evidentiary hearings. On July 21, 2000, Fuks discharged her attorney and retained Jay Fialkoff of Moses & Singer L. L. P. Mr. Fialkoff was Fuks's fourth attorney since the litigation commenced in December 1996 in Supreme Court.

In a letter dated August 7, 2000, the AAA informed the parties that Mr. Spiro had made the following disclosure: "The new attorney retained by Mrs. Fuks, Jay Fialkoff, is affiliated with Moses & Singer (I do not know whether he is a partner or an employee of the firm). Moses & Singer is a client of the Long Island office of BDO Seidman, retaining the firm to prepare its tax returns and perform other normal accounting services. I am a retired partner of BDO Seidman and continue to perform consulting services for the firm in its New York City Office. However, I do not share in the profits of BDO Seidman and do not know any partner or employees of Moses & Singer, including Mr. Fialkoff. I will not be prejudiced in any way by the client relationship between Moses & Singer and BDO Seidman, but the parties should be informed about it and decide what action, if any, they wish to take." The AAA advised that, absent any objections to Mr. Spiro's continued service as of August 17, 2000, the appointment would stand.

By letter dated August 8, 2000, Mr. Fialkoff informed the

AAA that it was his understanding that Moses & Singer used BDO Seidman to perform routine accounting services and had engaged the forensic accounting division of BDO Seidman on behalf of an unrelated client in a pending litigation. In addition, Moses & Singer had performed legal services for BDO Seidman from time to time.

By letter of August 17, 2000, petitioners' attorney wrote to the AAA objecting to Moses & Singer's representation of Fuks, because of the "strong ties that exist between the Arbitrator's firm, BDO Seidman, and Moses & Singer." "[T]he connection between the firms is too great to overlook and, at the very least, presents an appearance of partiality. Certainly, had Moses & Singer been the attorneys from the inception, and had I known then of their relationship with Arbitrator Spiro's firm, the Arbitrator would not have been the Respondent's choice to preside over this matter."

However, the attorney argued that "it would be grossly unfair to the [petitioners] for the Arbitrator to recuse himself at this late stage of the proceeding," and that it would be impossible for any new arbitrator to take over the case "in mid-stream." He concluded: "While I have no knowledge as to the reasons underlying the Claimant's decision to discharge her prior attorney and retain Moses & Singer (she was aware that the Arbitrator was associated with BDO Seidman), if their choice had the effect, intended or not, to justify the Arbitrator's recusal, then it is her lawyer who should go and the Arbitrator who should stay."

In response, Mr. Fialkoff asserted that the AAA had no authority to disqualify a party's attorney, such authority being the exclusive province of the courts.

On August 25, 2000, the AAA wrote to the parties informing them that, after "carefully considering" their contentions, it had determined to remove Mr. Spiro as arbitrator. This proceeding to disqualify the law firm of Moses & Singer and to reinstate Mr. Spiro ensued.

As the Court of Appeals has warned, "Precisely because arbitration awards are subject to [ ] judicial deference, it is imperative that the integrity of the process, as opposed to the correctness of the individual decision, be zealously safeguarded" (*Matter of Goldfinger v Lisker*, 68 NY2d 225, 230; *see also, Matter of Fischer [Queens Tel. Secretary]*, 106 AD2d 314, 315-316 [Kassal, J., concurring] ["basic, fundamental principles of justice require complete impartiality on the part of the arbitrator and mandate that the proceedings be conducted without any appearance of impropriety"]). Implicit in the decision of

the AAA to remove Mr. Spiro as arbitrator is the recognition that the relationship between him and Moses & Singer created at least the appearance of partiality. The question is whether the proper remedy was to remove Mr. Spiro or to disqualify the firm.

In *In re Federal Communications Commn.* (208 F3d 137), the United States Court of Appeals for the Second Circuit *sua sponte* directed a law firm that first appeared before it on a petition for rehearing of a previous decision and whose appearance caused the recusal of one of the judges who signed the court's opinion to withdraw its appearance in the present matter. The court made no finding as to the firm's good faith or intent, but recognized that "tactical abuse becomes possible if a lawyer's appearance can influence the recusal of a judge known to be on a panel" (at 139), and concluded: "As between a judge already assigned to a panel, and a lawyer who thereafter appears in circumstances where the appearance might cause an assigned judge to be recused, the lawyer will go and the judge will stay. * * * So the failure of counsel to consider in advance the known or knowable risk of a judge's recusal may result in the rejection of the appearance by that lawyer or firm." (*Id.*, at 139-140.)

We are satisfied that the reasoning of the Second Circuit should be applied to the case before us (*see also, People v Mackey*, 175 AD2d 346, 348, *lv denied* 78 NY2d 969 [recusal of judge was not appropriate remedy in light of judge's intimate involvement in matter from inception and counsel's status as newcomer to proceedings]). Fuks discharged her third attorney and retained Moses & Singer nearly two years and nine months after the arbitration proceeding had begun and Mr. Spiro had presided over seven preliminary hearings and conferences and 18 days of evidentiary hearings at which 17 witnesses testified, hundreds of exhibits were admitted, and 30 rulings and directives were issued by the arbitrator. Among the latter were rulings adverse to Fuks, for example, that Shomron was not the accounting party, that Fuks bore the burden of proof, and that Fuks's claims would be limited to events that occurred during the course of her investment in the partnership so that she could not recover from individuals who were partners for their acts or from the partnership for its acts that occurred before she was admitted as a partner. Petitioners claim that they had incurred $125,000 in attorneys' fees and approximately $30,000 in arbitration fees.

Mr. Spiro had been chosen as arbitrator from a list of potential arbitrators provided to the parties by the AAA. His

curriculum vitae indicates that his current employer and title were "BDO Seidman LLP—Partner, Consultant," and his relevant work history is identified as "Partner/Consultant, Certified Public Accountant, BDO Seidman LLP, 1961—present." Although Mr. Fialkoff's additional disclosures concerning the relationship between BDO Seidman and Moses & Singer followed promptly upon Mr. Spiro's disclosure, it appears that counsel failed to consider in advance the known or knowable risk of Mr. Spiro's removal. We need not find that Fuks engaged in arbitrator-shopping to find that Moses & Singer's appearance before Mr. Spiro tainted the proceeding (*see*, *People v Mackey*, *supra*, at 348 ["the question of motivation is not the most important issue here. What is important here as a policy matter is the avoidance of any *appearance* of improper 'Judge-shopping'" (emphasis in original)]).

We therefore are satisfied that the most appropriate response to this difficult situation is disqualification of Moses & Singer (*see*, *Matter of Lipschutz [Gutwirth]*, 304 NY 58, 63 [the Supreme Court in arbitration matters "does act as a court of equity—it applies equitable principles and enjoys a certain latitude of discretion"; moreover, "equitable relief may be tailored to the demands of circumstances"]).

With respect to the AAA's decision to remove Mr. Spiro as arbitrator, Fuks argues that it was authorized by AAA Commercial Arbitration Rules rule 19 (b), which states, in pertinent part, *"Upon objection of a party to the continued service of a neutral arbitrator*, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive"* (emphasis added), on the ground that petitioners objected to Mr. Spiro's continued service in their attorney's August 17, 2000 letter to the AAA (*supra*). However, this is a misreading of that letter. Moreover, there is no reference to any rule in the AAA's communication to the parties advising that it had determined to remove Mr. Spiro as arbitrator. In any event, since neither party objected to Mr. Spiro's continued service, the AAA was not authorized to disqualify him (*see*, *Matter of Oltarsh [Classic Dresses]*, 255 App Div 532, 536 [arbitration committee's disqualification of all three arbitrators upon showing of bias and prejudice by only one arbitrator, albeit arguably convenient and expedient, was unwarranted by its own rules, and award was invalid]), and he should be reinstated.

Fuks's motion to dismiss this appeal as moot (No. 3272), in view of advice from the AAA by letter dated May 9, 2001, that as of May 7, 2001, Mr. Spiro "formally resigned as Arbitrator

in the above-captioned matter," is denied for the following reasons. In response to correspondence it received from the parties concerning Mr. Spiro's resignation, the AAA wrote: "Mr. Spiro was removed as the Arbitrator in this matter by the AAA on August 25, 2000, therefore, it would be inappropriate for the AAA to reject Mr. Spiro's resign [sic] or urge Mr. Spiro to hold his decision to withdraw in abeyance until the appeal is decided." As petitioner argues, the inference of this statement is that if the AAA had not removed Mr. Spiro, it might deem it appropriate to reject his resignation. Then, in the event that we ordered him reinstated, he might return as arbitrator. Since, as Fuks advises, the AAA appointed a new arbitrator on April 30, 2001, and only scheduled a first hearing before him for June 13, 2001 (which we have stayed by order of June 12, 2001), the benefit of Mr. Spiro's continuing as arbitrator in this proceeding, that is, his complete familiarity with the matters under dispute, will still exist. Therefore, the appeal is not moot. Concur—Sullivan, P. J., Ellerin, Wallach, Rubin and Buckley, JJ.