[958 NE2d 891, 934 NYS2d 763]

U.S. ELECTRONICS, INC., Appellant, v SIRIUS SATELLITE RADIO, INC., Respondent.

Argued October 18, 2011; decided November 15, 2011

**APPEARANCES OF COUNSEL**

*Schlam Stone & Dolan, LLP*, New York City (*Richard H. Dolan, Andrew S. Harris* and *Samuel L. Butt* of counsel), for appellant.

*Kramer Levin Naftalis & Frankel, LLP*, New York City (*Michael S. Oberman, Peter A. Abruzzese, Timothy P. Harkness, Karen S. Kennedy* and *Ashley S. Miller* of counsel), for respondent.

*Louis B. Kimmelman,* New York City, *Louis Epstein, Kathleen M. Scanlon* and *John D. Roesser* for Association of the Bar of the City of New York, amicus curiae.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed, with costs.

Petitioner U.S. Electronics, Inc. (USE) seeks to vacate a unanimous arbitration award in favor of Sirius Satellite Radio, Inc. (Sirius) arising out of a breach of contract dispute. USE, which had a nonexclusive agreement with Sirius to distribute radio receivers, claims that Honorable William Sessions, the chairman of the arbitration panel, failed to disclose relationships of interest that affected the impartiality and propriety of the arbitration process. Specifically, that his son, Congressman Peter Sessions, had publicly advocated a merger between Sirius and XM Satellite Radio, Inc. (XM); and that his son was a close political ally of Congressman Darrell Issa, the founder and director of Directed Electronics, Inc. (DEI), a competitor of USE in radio receiver distribution.

As this matter affects interstate commerce, the vacatur of the arbitration award is governed by the Federal Arbitration Act (*see Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp.,* 4 NY3d 247, 252 [2005]) which provides, in pertinent part:

> "(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—. . .
>
> "(2) where there was *evident partiality* or corruption in the arbitrators, or either of them" (9 USC § 10 [a] [2] [emphasis added]).

In *Commonwealth Coatings Corp. v Continental Casualty Co.* (393 US 145 [1968]), the United States Supreme Court was asked to consider the "evident partiality" standard by a petitioner seeking to vacate an arbitration award after learning that an arbitrator on the panel had a significant business relationship, spanning four to five years, with a party to the hearing. In finding evident partiality, Justice Black reasoned that arbitrators—like judges who must recuse themselves for even the slightest interest that is "likely to influence improperly a

judicial officer in the discharge of his duty" (393 US at 148)—"must be unbiased but also must avoid even the appearance of bias" (*id*. at 150). In a concurring opinion, Justice White remarked that he would not hold so broadly because upholding arbitrators to the standards of judges would automatically "disqualify the best informed and most capable potential arbitrators" (*id.*).

In *Morelite Constr. Corp. (Div. of Morelite Elec. Serv., Inc.) v New York City Dist. Council Carpenters Benefit Funds* (748 F2d 79 [2d Cir 1984]), the United States Court of Appeals for the Second Circuit declined to follow the opinion of *Commonwealth,* concluding that it did not have binding effect. Instead, the court fashioned a reasonable person standard, stating that evident partiality "will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration" (748 F2d at 84). The court reasoned that evident partiality was a stringent standard that could not be satisfied by a mere appearance of bias, but also recognized that proof of actual bias is rarely adduced. Accordingly, the reasonable person standard struck the proper balance so that "courts may refrain from threatening the valuable role of private arbitration in the settlement of commercial disputes, and at the same time uphold their responsibility to ensure that fair treatment is afforded those who come before them" (*id.*).

As a result, there is a plethora of case law from the Second Circuit adhering to the reasonable person standard (*see Local 814, Intl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v J & B Sys. Installers & Moving, Inc.,* 878 F2d 38 [2d Cir 1989]; *Lucent Tech. Inc. v Tatung Co.,* 379 F3d 24 [2d Cir 2004]; *Applied Indus. Materials Corp. v Ovalar Makine Ticaret Ve Sanayi, A.S.,* 492 F3d 132 [2d Cir 2007]; *Ecoline, Inc. v Local Union No. 12 of Intl. Assn. of Heat & Frost Insulators & Asbestos Workers, AFL-CIO,* 271 Fed Appx 70 [2d Cir Mar. 26, 2008]).

In light of this settled law, we adopt the Second Circuit's reasonable person standard and apply it when we are asked, as in this case, to consider the federal evident partiality standard of 9 USC § 10. Consequently, the Appellate Division erred by imposing upon USE a "burden of proving by clear and convincing evidence that any impropriety or misconduct of the arbitrator prejudiced its rights" (73 AD3d 497, 498 [1st Dept 2010]). No such standard can be gleaned from federal precedent. However, the court correctly determined that there was no basis to vacate the arbitration award.

"A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high" (*Ecoline*, 271 Fed Appx at 72). USE's claims of bias, premised on attenuated matters and relationships, are not sufficient. That Chairman Sessions' son publicly endorsed the Sirius-XM merger had no impact on the merits of the separate and distinct breach of contract matter. Moreover, the purported connection between Chairman Sessions and Congressman Issa through his son's political relationship is too tenuous to impute partiality or bias to the chairman (*Transportes Coal Sea De Venezuela C.A. v SMT Shipmanagement & Transp. Ltd.*, 2007 WL 62715, *3, 2007 US Dist LEXIS 1802, *9 [SD NY Jan. 9, 2007] ["the interest or bias . . . must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative"]). This would be a far different case if USE could allude to a personal or business relationship between Chairman Sessions and Congressman Issa; or if his son had a prominent role at Sirius or DEI (*see Morelite*, 748 F2d at 84). However, absent such a showing, these allegations, without more, amount to speculation of bias (*see Local 814*, 878 F2d at 41).

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order affirmed, with costs, in a memorandum.